**E-FILED**
Thursday, 26 August, 2010  04:40:50 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Dianna Anderson, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 08-4070 |
| | ) | |
| United States Postal Service | ) | |
| Defendant | ) | |

## OPINION

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court is the Defendant's Motion for Summary Judgment (#12). As stated herein, the Motion is GRANTED.

## SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the

evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999).

The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir.1999). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., Jordan v. Summers, 205 F.3d 337, 342 (7th Cir.2000).

The parties must identify the evidence (i.e. those portions of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and documents) that will facilitate the court's assessment. Waldridge, 24 F.3d at 922. Thus, as Fed.R.Civ.Proc. 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of her pleadings. Rather:

> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not

so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). See also, Local Rule CDIL 7.1D.  Neither the moving party nor the responding party may simply rest on allegations; those allegations must be supported by significant probative evidence tending. First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(when the moving party has met its burden, non-moving party must do more than show some "metaphysical doubt " as to material facts). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995), citing Anderson, 477 U.S. at 248. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.

## STATEMENT OF UNDISPUTED FACTS

The following recitation of facts is taken from the parties' statements of undisputed facts, the response and reply thereto, and the evidence submitted in support thereof.

Postmaster Craig Anderson hired Plaintiff Dianna Anderson as a substitute rural carrier in the Geneseo, Illinois Post Office in 1989. To avoid confusion from their identical last names, Postmaster Anderson will be referred to herein as "Postmaster" and Plaintiff Anderson will be referred to as "Anderson."

3

In 1995, Anderson became a full time rural carrier. Rural carriers use their own cars to deliver the mail. In 2000, Anderson was involved in a work-related car accident, causing a broken knee, a punctured retina, head and neck injuries, and internal injuries. As a result of the accident, she claims that she has neurological deficits in her brain functions and in her feet and legs and has short term memory loss. Her balance is impaired. She also suffers from sleep apnea and gastroparesis. Unrelated to the accident, Anderson is also diabetic and asthmatic.

In 2005, the Postal Service changed its procedure for processing applications for FMLA leave. On September 9, 2005, the Postmaster held a meeting with the Geneseo Post Office employees, providing them with information about this change. Each employee was given a form from the Postal Service advising employees about the new procedure for obtaining FMLA leave. Each employee at the meeting, including Anderson, placed their initials next to their name indicating that they had received the form regarding this change in FMLA procedures. This form advised employees that if they requested a new FMLA absence, a message would be sent to Resource Management System in Topeka, Kansas. Someone in Topeka would mail the employee "an FMLA information packet" which would include a cover letter, Publication 71, and WH 380 Form[1]." This packet would be mailed to the employee's home address.

By October of 2005, Postal Service Publication 71 was displayed in the employee break room at the Geneseo Post Office, where it has remained posted since[2]. Publication 71 is titled "Notice for Employees Requesting Leave for Conditions Covered by the Family and Medical Leave Act." It contains a thorough explanation of employee rights and obligations under FMLA. A copy of

---

[1] WH380 is a Postal Service form entitled "FMLA Certification of Health Care Provider."

[2] During one week in 2007 the break room was being painted. All notices and postings, including Publication 71, were removed for that week only.

Publication 71 is attached to Defendant's Reply Brief as an exhibit to the affidavit of the Postmaster.

Just a few days after that September 9, 2005, meeting, the Postal Service FMLA Coordinator sent Anderson a letter stating that she had recently requested leave for a condition that may qualify for protection under the FMLA. This letter included several forms, including Form 71. The letter advised that she needed to provide medical certification of her medical condition within 15 days. She failed to do so. Another letter was sent on October 5, 2005, asking Anderson to acknowledge that she had failed to submit medical documentation and that her absence on September 20 was not protected by FMLA. Anderson signed this document on October 7, 2005.

On Sunday, August 19, 2007, Anderson was not scheduled to work. She had become ill with vomiting the day before and was still ill on Sunday. She called the Postmaster at his home to let him know that she was ill and would not be coming into work on Monday and that he needed to find a substitute. The Postmaster told her he was off work on Monday but that he would let the supervisor in charge know. The Postmaster called that supervisor, Kandy Hilburn.

On Monday, August 20, Anderson called the office of her doctor, Dr. Gowda. She was told he was in surgery and would be unavailable all day on Monday but could see her on Tuesday August 21. Anderson called into work and told Kandy that she would not be in on Monday and would follow up on Tuesday. She believes that she told someone that she had an appointment with her doctor on Tuesday.

On Tuesday, Anderson was still vomiting; she went to see Dr. Gowda. He provided no testing or treatment that day because Plaintiff was already scheduled for an endoscopy in the near future. He told her not to return to work until Thursday, August 23. Anderson notified the Post Office that she would return on Thursday. According to the Postmaster, Anderson called in once or twice and

5

extended her time off for illness through Wednesday.

On Thursday, she returned to work with a note from Dr. Gowda's office. This note identified Dianna Anderson as the patient, and stated, "My patient has been under my care from Aug.20 to Aug 22 and is able to return to school/work on August 23. It is signed and dated August 21. Anderson claims she put this note on a clipboard that hung at her work station; Kandy testified that Anderson handed her the note. Anderson then left for her route.

On August 20, Kandy had prepared a leave request for Anderson on Postal Service Form 3971; she placed this form on Anderson's clipboard at her work station for Anderson to sign when she returned. Anderson filled out the form on her return, indicating her intent to use "X days"[3] to cover 3 days of absence. She then left for her route.

When she returned from her route, Anderson found a note on her clipboard from Kandy reading, "Dianna, Craig said cannot use X days as they are assigned by management. He will be here this afternoon. Thanks, Kandy". She nonetheless completed forms for sick leave to cover the absences; these forms indicate that the absences are "approved, not FMLA" and that the absences were for non-work-related sick leave. She had insufficient sick leave to cover all three days, however, so she took sick leave for the first two days and completed another leave request for annual leave covering the third day. The parties agree that there was no discussion of FMLA leave at this time.

On the morning of the 23rd, before the Postmaster arrived, Kandy noticed that Anderson's note from Dr. Gowda's office appeared to have been altered. It looked to Kandy as though the "August 21" on the note had originally read "August 20" and that the "1" had been closed to form a zero. When the Postmaster arrived, Kandy showed him the note. They discussed it and also discussed Plaintiff's

---

[3] "X days" are extra days off that a carrier may earn by working overtime when needed.

6

request to use "X days" to cover her absences for the 3 days.

Following his discussion about the note with Kandy, the Postmaster called the Post Office Labor Relations Manager, Steve Thalken, for advice on the procedure to follow when it appears that an employee has presented altered documentation for a medical absence. Thalken contacted the Office of Inspector General ("OIG") to request an investigation into whether Anderson had submitted an altered medical record. OIG assigned Special Agent Paul Reiser as lead investigator.

On October 2, 2007, a union steward had been at the Post Office to advise that Anderson had been successful in a grievance she had previously filed.[4]

On October 3, 2007, Reiser contacted Dr. Gowda's nurse, Lisa Slatopcoff, who informed him that Anderson was under the doctor's care on August 21 and 22, 2007. She also provided Reiser a copy of the original note from the doctor's file, which indicated that Anderson had been under care on August 21st and not on August 20th.

Also on October 3, 2007, Anderson was called into the Postmaster's office. She assumed that the Postmaster "was going to retaliate against me in some form for the grievance." Instead, when she arrived at the Postmaster's office, he left. Reiser and another inspector from the Postal Service were there and proceeded to interview Anderson; most of the details of this interview are disputed, except that both parties agree Anderson denied altering the note. Anderson claims that this meeting is the first time she became aware that the doctor's note had been altered.

On October 6, 2007, Anderson injured her leg at home. Kandy learned that Anderson did not have enough accrued sick leave to cover extended time off for this injury, so with the Postmaster's approval, she placed a request in the computer system that Anderson be provided with FMLA leave.

---

[4]The substance of this grievance is unrelated factually to any issue in the case before this Court.

FMLA personnel for the Post Office notified Kandy at a later date that Anderson had failed to complete and return the FMLA forms. Kandy, again with the Postmaster's approval, sent Anderson a letter explaining that if she did not return the medical documentation to the FMLA coordinator by the deadline, her absence would be "unscheduled." Kandy included a stamped, pre-addressed envelope for submitting the forms. Apparently the forms were completed and her FMLA leave was approved.

While Anderson was on leave, the OIG finished its investigation into the possibly altered note. Reiser prepared a report, concluding that the medical documentation had been altered and that Anderson had altered it to validate her 3 day absence. He submitted this report to Thalken, the Postmaster and Kandy Hilburn.

Anderson was released to return to work on November 25, 2007. Kandy tried to have a conversation with her about her side of the story about the altered documentation. Anderson requested that a union steward be present, so the discussion was postponed. It was held on November 27. In attendance were Anderson, Kandy Hilburn, the Postmaster and the union steward. Other than Anderson's denial that she had altered the document, the parties disagree about what was said at the meeting.

The Postmaster spoke with Dr. Gowda's office manager, Dawn Weiss, who confirmed to him that plaintiff had not been under the doctor's care on the 20th and that the note in his possession had been altered from the one given to Plaintiff by the doctor's office.

In determining what discipline was appropriate, Kandy spoke with Thalken for his advice. He told her that submitting false documentation, even on a first infraction, is grounds for dismissal. He based that advice on a section of the Employee Relations Manual (ELM) that required postal

8

employees to be honest, reliable and trustworthy and to refrain from engaging in dishonest, immoral or other conduct prejudicial to the Postal Service. At the time Kandy and Thalken spoke, Thalken was entirely unaware that Anderson was on FMLA leave at the time.

In addition to Thalken's advice, Kandy also relied on several other factors. The first was an arbitration decision that had dealt with submission of falsified documents. That decision held that removal is appropriate, even for a first time offense. Kandy also knew that Anderson had been disciplined on two prior occasions for unsatisfactory performance.

Considering these two factors and Thalken's advice, Kandy determined that termination of Anderson's employment was the appropriate discipline. Anderson was placed on administrative leave on Nov. 26, 2007, pending approval of discharge. The decision to terminate Anderson's employment was reviewed and approved by the Postmaster and by the Postmaster's supervisor Lori Cross. It was then sent to the Labor Relations Office for review. Labor Relations agreed that termination of Anderson's employment was appropriate. On December 10, 2007, Kandy Hilburn signed a Letter of Removal; the letter was signed by the Postmaster as the reviewing official.

Anderson received this letter on December 12, 2007. She appealed her discharge. The decision was upheld in the initial appeal, but on further appeal Anderson was reinstated to her position as rural carrier. She returned to work on April 23, 2008. She received no back pay and the time she was off was shown as a suspension.

During her years at the Post Office, Anderson has filed a number of complaints against the Postmaster; she does not recall how many but testified it could have been more than 10. The Postmaster testified that there have been "a number of discussions" with Anderson about poor performance, some of which resulted in discipline. Anderson claims that beginning in 2006 until he

retired in 2009, the Postmaster singled her out by requiring her to provide medical documentation upon her return from work when she took sick leave. One reason, she believed, was that the Postmaster was "a control freak." She also believed that he was retaliating for her absences and because she had filed grievances.

Plaintiff filed her one-count complaint, alleging violations of the FMLA[5]. Defendant has now filed a motion for summary judgment. .

## JURISDICTION AND VENUE

Anderson filed her complaint on Dec. 1, 2008, in Henry County, Illinois. The Postal Service removed the case pursuant to 28 U.S.C. 1446 and 1442. Section 1442 provides that an action against "the United States or any agency thereof" may be removed. 28 U.S.C. § 1442(a)(1). The Notice of Removal asserts that the Postal Service is an agency of the United States Government within the meaning of that statute. This case also arises under the Family Medical Leave Act, a federal statute. This Court accordingly has jurisdiction over the subject matter of this complaint not only because a United States agency is the defendant, but also because this case arises out of a federal question.

Venue is proper in this District, because the events forming the basis of this complaint occurred at Plaintiff's place of employment in Geneseo, Henry County, Illinois, within the Central District of Illinois, Rock Island Division.

## DISCUSSION

<u>INTRODUCTION</u>

---

[5]Plaintiff has also alleged that Defendant violated her rights under HIPAA (Complaint, ¶ 8). Those courts to have considered the issue have concluded that HIPAA does not authorize a private right of action. See, e.g., <u>Doe v. Bd. of Trustees of Univ. of Ill.</u>, 429 F.Supp. 2d 930, 944 (N.D.Ill.2006)(citing cases); <u>Hubbard v. Cope</u>, - F.Supp. 2d -, 2008 WL 2410856, June 11, 2008 (S.D.Ill.). I agree with the reasoning set forth in <u>Doe</u> that enforcement of HIPAA is left to the Department of Health and Human Services alone and that no private right of action exists.

The Postal Service has moved for summary judgment on Plaintiff's claim for retaliation under FMLA. In response to this motion, Plaintiff has conceded the retaliation claim. See Response, p.37. Judgment is therefore directed in favor of the Defendant on that claim.

Plaintiff asserts, however, in response to the motion that there are two other claims that the Defendant's motion has ignored: an entitlement claim and an interference claim. The difference between these two types of claims, according to plaintiff, is that, speaking generally, an entitlement claim requires proof that the plaintiff was entitled to benefits that were *denied*, while the interference claim requires proof that the employer *interfered* with the exercise of statutory rights in some other way.  In its reply, the Postal Service asserts that the complaint includes no such claims. A review of the complaint makes the source of this disagreement readily apparent.

The Complaint alleges that Anderson is a person with a serious medical condition, citing 42 U.S.C. section 12/105 et seq. There is no such statute. No other statutory citation is included in the complaint, and the complaint is not divided into separate counts. Defendant was therefore left to surmise under what parts of the statute Anderson's claims arose.

The lack of statutory citations would have been unimportant had the complaint's *factual* allegations been more specific. A fair reading of the complaint, however, reveals that every factual allegation is tied to a claim that the Postal Service acted or failed to act *in retaliation* for Anderson's exercise of rights under the FMLA.  The specific allegation on which Plaintiff rests her argument that she has presented an entitlement claim is paragraph 6, which reads:

> That Dianna, due to her serious medical condition was unable to work for three consecutive days beginning August 20 through August 22, 2007. Dianna notified the Defendant of the fact that she was unable to work and was asking for leave from her scheduled work days due to her serious medical condition.

11

That paragraph, however, alleges no interference with or denial of any statutory rights. It simply states that Dianna sought leave. The allegation must therefore be read in conjunction with the following paragraph, which reads:

> That Defendant, in retaliation for Dianna [sic] exercising her rights under the Family Medical Leave Act, retaliated against her and falsely accused her of alleged misrepresentation of her time off or altering a medical record to cover her leave time.

Complaint, ¶7. Clearly, this paragraph alleges retaliation only, as does ¶ 9. Paragraph 10 simply says she was placed on administrative leave and then fired "in violation of her rights under the FMLA," an allegation that does not specify any "rights" and clearly implies retaliation, not interference or denial.

Paragraph 12 alleges that, since her return to work after her grievance, Defendant through the Postmaster "continually harasses and threatens the plaintiff with termination in violation of plaintiff's rights under the FMLA." Because there is no allegation that the harassment and threats are related to any new FMLA claim, but rather are a result of her return to work following her grievance, this paragraph too is a retaliation claim.

Plaintiff made no effort to amend her complaint at the conclusion of discovery, nor has she done so at any time since then. Under Rule 15, she would have the right to do so, even at this late date, if "justice so requires." In this case, however, I conclude that justice does not so require.

This case has proceeded through discovery on the single theory that this was a retaliation case. As recently as Plaintiff's response to the Defendant's motion for summary judgment, Plaintiff *admitted* the following statement: "Based upon Plaintiff's complaint and her answers to the Defendant's interrogatories, the only issue in this case is whether the Plaintiff can establish that the Defendant intentionally retaliated against the Plaintiff by terminating her employment in retaliation

for exercising her rights under the FMLA."

It is certainly true that a complaint need not plead legal theory. "Having specified the wrong done to [her], a plaintiff may substitute one legal theory for another without altering the complaint." Albiero v. City of Kankakee, 122 F.3d 417, 419(7th Cir.1997). Here, however, Anderson's complaint is specific about the wrong that she claims was done to her: she lost her job in retaliation for exercising statutory rights. Her complaint fails to plead facts from which an alternative legal theory - entitlement to FMLA benefits and denial thereof - might fairly be inferred.

Although Rule 8 only requires a "short and plain statement of the claim," the better practice in this case would have been for Anderson to adopt the requirement contained in Rule 10 that claims based on separate occurrences be stated in separate counts "[i]f doing so would promote clarity." Fed.R.Civ.P. 10(b). If she has an entitlement claim, it stems from denial of FMLA benefits, a separate occurrence from her termination. Likewise, if she has an interference claim, it must be based on something other than either the denial or the termination. Anderson's criticism of the Defendant (Response, p.22) for failing to parse the complaint and guess that other claims lay hidden is unjustified.

By the time discovery is concluded and dispositive motions have been filed, both parties should have a full understanding of the claims and defenses being presented. Being less than candid about the true nature or the scope of one's claims at the summary judgment stage is not permissible. See, Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002)(a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Unless new facts come to light - and there are no new facts here - justice does not require that a plaintiff be allowed to add a previously-unplead claim at this late date.

I conclude that Plaintiff has plead one type of claim only - retaliation - and Plaintiff has conceded that claim. Entry of judgment in favor of the Defendant as to the entire case is therefore proper.

In the alternative and for the sake of completeness, however, the Court will also consider the substantive arguments with respect to the entitlement and interference claims.

INTERFERENCE CLAIM

The Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 et seq, establishes a substantive right to employees: "[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer's denial of this statutory right may give rise to an "interference " claim under the FMLA.

Defendant has summarized Andersons' interference claim as follows: Anderson took leave from August 20 to August 22, 2007, for what she asserts was a serious medical condition, thereby entitling her to FMLA leave. Because she was entitled to benefits under FMLA and because the Postmaster had sufficient notice that her time off was for a serious medical condition, the Postal Service was required to inform her that her leave was FMLA eligible. The Postal Service, however, did not make her aware of her eligibility for FMLA leave until October 2007. In her response, Anderson did not suggest that this summary of her entitlement claim is inaccurate.

To establish a claim of interference with FMLA rights, a plaintiff carries the burden, Darst v. Interstate Brands Corp., 512 F.3d 903, 908 (7th Cir. 2008), of establishing that (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer

14

denied her the FMLA benefits to which she was entitled. Goelzer v. Sheboygan County, Wis., 604 F.3d 987, 993 (7th Cir. 2010), citing Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006). There is no need to prove discriminatory or retaliatory intent in an interference claim; such claims simply require proof that the employer denied an employee entitlements under the FMLA. Goelzer, 604 F.3d at 995, citing Lewis v. School Dist. #70, 523 F.3d 730, 741-42 (7th Cir. 2008) and Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005). See also, Smith v. Hope School, 560 F.3d 694, 699 (7th Cir. 2009).

The fourth and fifth elements require the plaintiff to establish that she gave sufficient notice of her intent to take leave to which she was entitled under FMLA. Regulations enacted under FMLA obligate an employee to "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). Defendant asserts that Anderson's notice was insufficient to trigger any obligation on its part to consider FMLA leave or to inform her about such leave.

An employee is not required to refer to the FMLA in order to satisfy the burden to provide notice. Burnett, 472 F.3d at 478 ("Of course, an employee need not expressly mention the FMLA ... or otherwise invoke any of its provisions when requesting leave"). That being said, however, "the notice must succeed in alerting the employer to the seriousness of the health condition." Stevenson v. Hyre Elec. Co., 505 F.3d 720, 725 (7th Cir.2007). Calling in sick without providing additional information does not provide sufficient notice under the FMLA. 29 C.F.R. § 825.303(b); see also, Burnett, 472 F.3d at 479; Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir.2001) (" 'Sick' does not imply 'a serious health condition.' "). This is true even if the employee provides her employer with a doctor's note if the note does not convey the seriousness of her medical condition.

15

See Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311-12 (7th Cir.2006). The FMLA's notice burden is not onerous but neither is it illusory. de la Rama v. Illinois Dept. of Human Services, 541 F.3d 681, 687 (7th Cir.2008).

Adequacy of the employee's notice was at issue in Aubuchon v. Knauf Fiberglass GmbH, 359 F.3d 950 (7th Cir. 2004). The Court of Appeals explained that the FMLA places the burden of giving notice on the employee as "the quid pro quo for the employer's partial surrender of control over his work force." Id. at 951. On the other hand, the notice requirement is not demanding:

> The employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. He doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave.

Id. at 953.

Although the notice requirement is not overly formalized, the notice must succeed in alerting the employer to the seriousness of the health condition. So, for example, in Aubuchon it was not enough for an employee to inform his employer that he needed leave because his wife was pregnant. Id. Had the employee added that his wife was having complications related to that pregnancy, however, that would have sufficed. Id. Likewise, a reference to being 'sick' " was found insufficient because "not only [did it] withh[o]ld important information from the employer but likely threw it off the scent [because] ... [c]ertainly it did not suggest to the employer that the medical condition might be serious." Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008-09 (7th Cir.2001). Accord, Stevenson v. Hyre Elec. Co., 505 F.3d 720, 724 -725 (7th Cir.2007); Burnett, 472 F.3d 471, 479 (7th Cir. 2006); Phillips v. Quebecor World RAI Inc., 450 F.3d 308, 312 (7th Cir. 2006).

Not until the employee has notified the employer of a probable need for medical leave does FMLA impose a duty on the employer to conduct further investigation and inquiry to determine

whether the proposed leave qualifies as FMLA leave. <u>Burnett</u>, at 480.

In the case before this Court, it is undisputed that Anderson called the Postmaster on Sunday and told him she was ill and would not be coming into work on Monday. It is undisputed that she called Kandy on Monday and told her she was ill and would not be in and would follow up on Tuesday. It is undisputed that Plaintiff notified someone at the Post Office on Tuesday or Wednesday that she would return to work on Thursday. It is undisputed that the physician's note stated that she had been under his care. It is also undisputed that at no time did Anderson inform anyone that her condition was "serious" or that it would require ongoing treatment, or any of the other aspects of medical conditions that make one eligible for FMLA leave. Even the doctor's note included no information about the condition for which she was seen; it simply said she was under his care.

This notice was insufficient as a matter of law to make the Postal Service suspect that Anderson's absence might qualify for FMLA leave. There was nothing about any of the conversations between Anderson and the Postmaster or Kandy that indicated she was suffering from the type of "serious medical condition" that would trigger the Postal Service's obligation to inquire further or to provide Anderson with information about FMLA.

Defendant also argues that the entitlement claim is premised on Anderson's assertion that she was never made aware of her rights under FMLA until she suffered her leg injury in October of 2007. While I agree with Defendant that this particular assertion by Anderson is totally belied by the facts recited herein, I disagree with Defendant that her claim is therefore inadequate as a matter of law.

Had Anderson shown her notice to her employer was sufficient to trigger the employer's obligations under FMLA, then the Post Office would have been obligated to mention FMLA even if Anderson had not. Defendant cites no law - and I have found none - to support its claim that an

employer has no obligation to consider FMLA to an employee who has previously been made aware of the statute or one who has previously used FMLA leave for an unrelated condition.

That is all immaterial, however, in this case, because Anderson's notice did not rise to the requisite level. The Postal Service was not obligated to consider FMLA leave or to inform Anderson that she might qualify for FMLA leave because there was no indication that she was suffering from the type of "serious medical condition" that would have entitled her to such leave. There are no material disputed facts as to that issue, and to the extent it may be found that Anderson included an entitlement claim in her complaint, the Postal Service is entitled to judgment on that claim as a matter of law on the entitlement claim.

Defendant also argues that Anderson's entitlement claim fails because she has failed to show any prejudice to her. FMLA "provides no relief unless the employee has been prejudiced by the violation. The employer is liable only for compensation and benefits lost 'by reason of the violation.'" Ragsdale v. Wolverine World Wide Inc., 535 U.S. 81, 89 (2002); see also Reed v. Buckeye Fire Equipment Co., 422 F.Supp. 2d 570, 576-77 (W.D.N.C.2006). In an entitlement claim, the employer is liable only for compensation and benefits lost by reason of the violation, for other monetary loss sustained as a direct result, and for appropriate equitable relief.

Defendant relies on Fulka v. Northwestern Medical Faculty Foundation Inc., - F. Supp. 2d -, 2007 WL 2404597, Aug. 14, 2007 (N.D. Ill) for its argument that Anderson has shown no prejudice. In that case, the employer initially denied FMLA leave and disciplined the employee for taking an unexcused absence. Upon receiving further information from the employee's physician, however, FMLA leave was granted and backdated, and the discipline was removed from employee's file.

Defendant points out that under FMLA, an employer may require that an employee use paid

sick, personal or annual leave as part of the 12 week FMLA leave. <u>Sims v. Schultz</u>, 305 F.Supp. 2d 838, 844 (N.D.Ill.2004); 29 U.S.C. § 2612(d)(2)(B). According to Defendant, Anderson was fully compensated for her 3 days off, through use of her sick and annual leave; any benefit to which she may have been entitled under FMLA was *unpaid* leave. Hence, Anderson's loss of leave time is not a cognizable "prejudice" under FMLA.

I agree that Anderson has failed to show any evidence of prejudice in connection with the Postal Service's failure to designate her 3 day's leave as FMLA qualified. In the absence of such prejudice, her claim fails as a matter of law, providing yet another basis for concluding that Defendant is entitled to judgment on this entitlement claim.

Plaintiff relies in significant part on <u>Smith v. Hope School</u>, 560 F.3d 694. In that case, the plaintiff's physician filled out FMLA medical certification forms with the diagnosis: "severe recurrent muscle tension [headaches] and [right] neck and arm pain [secondary] to trauma suffered at work." To that diagnosis, plaintiff herself added "plus previous depression." She also backdated her portion of the signature line to 3 days before she had picked up the forms. In addition, she filled out an "Attending Physician's Statement in its entirety, listing diagnoses of muscle tension, chronic headaches, and depression. Her request for leave was denied, and following several hearings, her employment was terminated. She filed an FMLA entitlement claim, which the District Court threw out on summary judgment.

On appeal, the Seventh Circuit ruled that an employee "presenting false certification paperwork" was not entitled to FMLA leave. The Court of Appeals limited the ruling, noting that it did not reach the question whether "other, more insignificant alterations, such as correcting a typographical error or correcting or adding to a portion of the form with the knowledge and approval

19

of a treating physician" would result in the same ruling.

Plaintiff attempts to show how this case helps her case, but those attempts are fruitless. Like the plaintiff in <u>Smith</u>, Anderson presented false certification paperwork in support of what she contends should have been viewed as a request for FMLA leave. The alteration on the form was more significant than the type of scrivener's error mentioned by the Court, and there is no dispute that her physician did not authorize the alteration. Moreover, there is nothing about the facts or the analysis in <u>Smith</u> that saves Anderson from the deficiencies that have been identified in this case. In fact, <u>Smith</u> simply puts another nail in this case.

<u>ENTITLEMENT CLAIM</u>

According to Plaintiff, her entitlement claim is that the Postal Service "failed to consider her leave requests as FMLA leave when they clearly were put on notice of that possibility." (Response p.22). The very heart of an entitlement claim, however, is a showing that the employee is "entitled" under FMLA to qualified leave.

As discussed thoroughly above, Plaintiff has failed to make that showing. She argues vociferously that she provided notice sufficient to make the Post Office aware that she might be eligible for FMLA leave, but her argument fall short because they are wholly unsupported by the evidence in this case. She quotes extensively from several cases, all of which rested on facts that are distinguishable and none of which, therefore, overcomes the lack of evidence supporting her claim.

Because she was not eligible for FMLA leave, she has not entitlement claim. Her claim fails as a matter of law.

**CONCLUSION**

Because Plaintiff has conceded her retaliation claim, and because she has failed to properly

plead and to produce evidence in support of her interference and entitlement claims, the United States Postal Service  is entitled to judgment as a matter of law. The Motion for Summary Judgment (#12) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant. This case is terminated.

ENTERED ON August 26, 2010

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE